WILLIAM LOHMEYER *et al.*

*v.*

ELIZA A. DURBIN.

*Opinion filed December 22, 1904—Rehearing denied Feb. 9, 1905.*

1. LACHES—*laches in asserting inchoate right of dower cannot be imputed.* During the life of the husband the wife's right to dower is a mere expectancy, which she cannot assert against him or any other person, and *laches* cannot be imputed to her for failure to assert it.

2. RES JUDICATA—*a foreclosure proceeding is not strictly a proceeding in rem.* A foreclosure proceeding is not strictly a proceeding *in rem*, since the decree is not conclusive against persons not parties to the suit.

MAGRUDER, J., dissenting.

APPEAL from the Circuit Court of McLean county; the Hon. J. H. MOFFETT, Judge, presiding.

HERRICK & HERRICK, KERRICK & BRACKEN, and BARRY & MORRISSEY, for appellants.

WELTY & STERLING, and EWING, WIGHT & EWING, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This case was before us on a former appeal, when we decided that if the allegations of appellee's bill had been sustained by the proofs she would have been entitled to a decree for the assignment of dower, but the decree was reversed for lack of sufficient proof to sustain it, and the cause was remanded to the circuit court of McLean county for further proceedings not inconsistent with the opinion then filed. (*Lohmeyer* v. *Durbin,* 206 Ill. 574.) The cause having been re-instated in the circuit court, the answer was amended and the cause was again referred to the master in chancery.

Additional evidence was introduced and the master reported the same, with his conclusion that the appellee was entitled to a decree in accordance with the prayer of her bill. The court overruled exceptions to the report and entered a decree finding appellee entitled to dower and appointing commissioners to set it off to her.

The reason for the reversal of the first decree was, that proof of the fact that William L. Drybread conveyed the lands in which complainant claimed dower, to her husband, Daniel M. Durbin, was not inconsistent with the allegations of the Blackford bill, and the findings of the decree thereon, that Blackford sold said lands to Durbin and caused the same to be conveyed to him. All that was proved might have been true, and it might also have been true that the premises were sold by Blackford to Durbin and that Blackford caused Drybread to make the conveyance. On the second reference to the master the necessary proof was supplied. Certified copies of two patents, dated July 1, 1854, from the United States to William L. Drybread, covering the property in question, were introduced in evidence. Drybread then testified that the complainant was his sister; that he entered the land from the government; that she paid him for the land; that he knew John R. Blackford; that Blackford had no interest in the land and had nothing to do with its conveyance to Durbin, and that he did not convey it for Blackford or at his request. He also testified that he first executed a deed to the complainant; that she and her husband afterward came to him and wanted him to make a deed to the husband, and that he destroyed the first deed and made one to the husband, Daniel M. Durbin. The Blackford bill alleged that the land upon which a lien was claimed was conveyed to Durbin by one Thomas Gardner, Jr., who then held the legal title to the land although Blackford held the equitable title. A deed from Thomas Gardner, Jr., and wife to Daniel M. Durbin of one hundred and twenty acres of land adjoining this land and included in the Blackford bill

was also offered in evidence. The proof established the facts that Blackford did not sell the land involved in this suit to Daniel M. Durbin; that he did not cause Drybread to convey it; that he had no agreement with Durbin to execute a purchase money mortgage on the same, as alleged in his bill; that the deed of Gardner mentioned in said bill did not include this land which Blackford never owned and never sold to Durbin, and that the allegations of the bill, so far as it related to this land, were untrue. The proof was satisfactory that the land in which dower is claimed was included in the bill and decree in the Blackford case through some mistake, and the findings of the master and court on that question were correct.

The questions of law in the case were considered and decided on the former appeal but are now re-argued by counsel for appellants. They insist that the appellee was barred of her claim for dower by *laches* and estoppel, and that she was conclusively bound by the decree in the Blackford case. While her husband, Daniel M. Durbin, was living she could not assert her right to dower against him or any other person. She had no vested estate, but a mere inchoate right or expectancy which she could not have asserted, and if she had died before her husband the right would have been extinguished. (*Kauffman* v. *Peacock,* 115 Ill. 212; *Miller* v. *Pence,* 132 id. 149; *Goodkind* v. *Bartlett,* 136 id. 18; *Kusch* v. *Kusch,* 143 id. 353; *Virgin* v. *Virgin,* 189 id. 144.) Counsel say that there is no difference, in principle, between the protection of an estate by the curtesy and a right of dower, and that the husband was allowed to protect his estate in the lifetime of his wife in the case of *Freeman* v. *Hartman,* 45 Ill. 57. In that case a voluntary conveyance was set aside because it was in fraud of the marital rights of the husband. The interest of a husband in the estate of his wife is within the protection of the statute, which declares void all conveyances made to defraud. (14 Am. & Eng. Ency. of Law,—2d ed.—252.) The deed was voidable at his election, and he

was therefore enabled to set it aside. The right of a wife to set aside a deed under like circumstances because in fraud of marital rights is not doubted, but it does not follow that she can assert a dower right in the lifetime of her husband. In the case of *Gilbert* v. *Reynolds,* 51 Ill. 513, the claim of dower was based on the alleged invalidity of a decree of divorce granted thirty-five years before, and the husband had married again the same year of the divorce, and it was held that the silence and inaction of the complainant for fifteen years after she knew of the decree was a fraud. She could have proceeded to have had that decree set aside at any time after she knew of it. Other cases are cited by counsel where it was held that dower was barred by an election of the widow knowingly and understandingly made, by which she received a bequest or other benefit in lieu of dower, and they do not sustain the claim made. The complainant was not barred by *laches.*

The ground upon which it is insisted the complainant was conclusively bound by the decree in the Blackford case is, that it was a judgment *in rem* and binding upon all persons. A judgment or decree is strictly *in rem* when it is not rendered against a specific person but against all whom it may concern and binds third persons. But a bill to foreclose a mortgage or lien is not solely a proceeding *in rem.* The object is to reach and dispose of property, but the proceeding is for the enforcement of an obligation *ex contractu* against a specific person and to foreclose his equity of redemption. The complainant could not be affected by the decree in a foreclosure suit to which she was not a party.

By the amendment to their answer the defendants alleged that on May 6, 1861, complainant and her husband filed a bill in the circuit court of McLean county to enjoin the sale under the Blackford decree, alleging that complainant purchased the land now in question from Drybread with her own money; that he made and delivered to her a warranty deed, which was never recorded; that she afterwards mar-

ried Durbin, who was dissatisfied with the fact that the title was in her and persuaded her to deliver back the deed and have a new deed made to him, which was done; that the description of the land was left blank in drafting the Blackford bill, but the blank was afterward filled up so as to include her land with other property; that she and her husband never thought that the bill sought to subject any land except that purchased from Blackford to the payment of the purchase money therefor and did not know that the bill included this land; that by virtue of the decree rendered by default the master had advertised for sale this land which Blackford never owned or sold or was otherwise interested in. The proof was that such a bill was filed praying that the title to the land be decreed to be in complainant; that a writ of injunction was issued restraining the sale, but the injunction was dissolved; that a general demurrer to the bill was sustained and the complainant took leave to amend the bill, and that on July 6, 1865, the suit was stricken from the docket with leave to re-instate at pleasure. In this case the complainant is only claiming dower, and does not assert any title on the ground that the land was first deeded to her and afterward conveyed to her husband by Drybread without any re-conveyance from her. The defendants are not in a position to make any such claim for her, and she is not barred of her claim for dower by having filed a bill asserting title as equitable owner. The attempt was futile and a general demurrer to her bill was sustained. The defense of Blackford and the other defendants to that bill was successful, and it was held that she had not stated any case entitling her to relief. We do not see how she could be affected in this suit by having filed the other bill.

The decree is affirmed.         *Decree affirmed.*

Mr. JUSTICE MAGRUDER, dissenting.